NEW YORK LIFE INSURANCE COMPANY *vs.* COSTAS RIGAS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

438

Argued June 15th—decided August 15th, 1933.

*Charles A. Watrous*, and *James Wayne Cooper*, for the appellant (plaintiff).

*William T. Keavney, Jr.*, with whom, on the brief, was *John H. Cassidy*, for the appellee (defendant).

BANKS, J. On November 14th, 1929, the plaintiff issued a policy of insurance upon the life of Peter S. Rigas, a resident of Poughkeepsie, New York, in the amount of $2500 payable to the defendant, the brother of the insured. The insured died August 22d, 1930, and the defendant submitted to the plaintiff proof of his death on August 30th, 1930. On October 6th, 1930, the plaintiff repudiated liability on the policy upon the ground of alleged false representations contained in the application, and tendered the defendant a check for the amount of premiums received. One of the terms of the policy was that it should be incontestable after two years from its date of issue, except for the nonpayment of premiums and except as to provisions

and conditions relating to disability and double indemnity benefits.

The plaintiff brought this action for the cancellation of the policy by a writ dated September 23d, 1931. The complaint alleges that the insured applied in writing to the plaintiff for a policy of insurance upon his life, that certain representations in his application were false and known to him to be false, that these representations were material to the risk and that the plaintiff issued the policy in reliance upon them and would not have issued it but for its belief that they were true. In his answer the defendant expressly denied that the insured applied in writing for a policy of insurance, denied that he executed the application which was attached to the policy and denied that the questions appearing upon such application were asked or that he made the answers appearing thereon. The original insurance policy was produced in court by the defendant and became an exhibit in the case. Attached to the policy is a photostatic copy of a form of application for a policy of insurance bearing a signature purporting to be that of Peter S. Rigas, and, as a part of the same document, what purport to be questions and answers upon a medical examination to which is appended also a signature purporting to be that of Peter S. Rigas. The original application was not offered in evidence, the only evidence offered by the plaintiff, aside from the policy and its letter repudiating liability with its accompanying check, being that of a physician in its medical department to the effect that the application would have been dismissed if it had contained truthful statements as to certain operations and hospital treatment undergone by the insured. It appeared that the medical examiner who took the application was dead at the time of the trial. The court held that upon the

pleadings it was incumbent upon the plaintiff to prove the execution and delivery of the application by the insured, and that, in the absence of any evidence of such execution, the plaintiff had failed to prove its case.

That certain of the answers to the questions appearing upon the copy of the form of application attached to the policy were not truthful is not disputed by counsel for the defendant, and is found by the court. The plaintiff meets the claim that it was incumbent upon it to prove that the insured signed the application and actually gave to the medical examiner the answers which appear upon the copy of the application attached to the policy, by the assertion that the defendant is estopped to make it. It contends that if the insured knew of the infirmities of the application he must be held to have adopted the fraud practiced upon the company; if he did not know of them, through a failure to study the policy, he was negligent, being the only person in a position to discover them, and that in either event the defendant as beneficiary under the policy, is bound by the failure of the insured to disclose to the company the untruthful character of the answers in the application which he would have known if he had read the copy attached to and made a part of the policy. The plaintiff is a corporation organized under the laws of the State of New York and there located; the policy was issued in New York to the insured when he was a resident there and it is to be presumed was accepted by him there. Under these circumstances the construction and effect of the policy are to be determined by the law of that State. *Mullen* v. *Reed,* 64 Conn. 240, 247, 29 Atl. 478; 2 Cooley, Briefs on Insurance (2d Ed.) p. 1026.

The policy contains the following provision: "The

policy and the application therefor, copy of which is attached hereto, constitute the entire contract." This is in compliance with § 58 of the New York insurance law (Laws of 1906, Chap. 326) which provides that the policy must contain the entire contract, and that the application if it is to have effect as a part of the policy must be physically indorsed thereon or attached thereto, so that the insured when he receives a policy may know all its terms by reading it or having it read. *Minsker* v. *John Hancock Mutual Life Ins. Co.*, 254 N. Y. 333, 173 N. E. 4. Prior to the enactment of that statute the courts of New York had held that if the medical examiner of a life insurance company was truthfully told, by the applicant for a policy, of facts which under the terms of the policy would make it void if not noted upon it, the company could not avail itself of the defense that such facts were not stated in the policy. The copy of the application not being attached to the policy, the insured could not, by reading the latter, ascertain that the medical examiner had incorrectly recorded his answers. *Sternaman* v. *Metropolitan Life Ins. Co.*, 170 N. Y. 13, 62 N. E. 763. When, however, a copy of the application is attached to and made a part of the policy, as the New York law now requires, and as was done in the present case, the New York courts no longer permit a recovery upon the policy on the theory that the answers of the applicant were incorrectly recorded. "When an insured receives a policy, it is his duty to read it or have it read, and if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected. In such circumstances a recovery will no longer be permitted because the medical examiner incorrectly recorded the applicant's answers or because the insured was unable to

read or neglected to read the policy." *Minsker* v. *John Hancock Mutual Life Ins. Co., supra,* p. 338.

In the absence of proof that the insured signed this application, the record does not present the question, discussed in numerous cases, as to whether an insured is barred of recovery where an application signed by him contains false statements, upon the theory that he is charged with knowledge of the contents of a document which he has executed. See cases collected in annotations in 81 A. L. R. 855 *et seq.* Assuming, as we must, that the insured did not sign the original application, he did receive the policy, to which was attached a photostatic copy of the application, and adjoining it a plainly printed note stating that the copy should be carefully examined and any error or omission immediately called to the attention of the company. Under the decision in the *Minsker* case it was the duty of the insured to read or have read to him the terms of the policy, including the statements in the copy of the application which was a part of it, and if the answers there given were incorrect, to have them corrected. If his failure to do this could in any event be justified, no facts are found in this case which would excuse his neglect of this duty. Having accepted the policy with the application annexed and continued to hold it for some nine months, until his death, paying the premiums thereon, he could not, and the defendant cannot, now disavow the representations stated in the application. *Davern* v. *American M. L. Ins. Co.,* 241 N. Y. 318, 325, 150 N. E. 129; *Satz* v. *Massachusetts Bonding & Ins. Co.,* 243 N. Y. 385, 391, 153 N. E. 844; *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613, 623, 36 Sup. Ct. 676.

The answers upon the application were untrue, and it is apparent that they were material to the risk and relied on by the company. Under these circumstances

there could be no recovery in an action upon this policy by the beneficiary. *State Bank & Trust Co.* v. *Connecticut General Life Ins. Co.*, 109 Conn. 67, 70, 145 Atl. 565. The defendant contends that, even so, the plaintiff is not entitled to a decree cancelling the policy, since the facts warranting such relief constitute a good defense at law to a suit upon the policy. *Aetna Life Ins. Co.* v. *Richmond,* 107 Conn. 117, 139 Atl. 702. This is true unless it appears that the circumstances are such that the plaintiff will suffer irreparable injury if it is denied such preventive remedy. The plaintiff claims that it would suffer such injury, if it were denied the relief here sought, since if suit upon the policy were delayed for over two years from its issuance, which period has already expired, it would be barred from defending the action under the incontestable clause in the policy. The policy provides that it "shall be incontestable after two years from its date of issue," except as to matters not here involved. The defendant contends that the death of the insured within the contestable period fixes the rights of the parties and prevents the incontestable clause from becoming operative after the expiration of that period. Such construction of the clause would require that there be read into it the further condition that the insured should still be alive at the expiration of the incontestable period. The only condition upon which the policy is made incontestable is that two years shall have elapsed since the date of its issue, and the New York Court of Appeals and the majority of the courts hold that the death of the insured within this period does not prevent the incontestable clause from thereafter becoming operative for the benefit of the beneficiary. *Killian* v. *Metropolitan Life Ins. Co.,* 251 N. Y. 44, 47, 166 N. E. 798; *Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 263 U. S. 167, 44 Sup. Ct. 90;

and cases cited in Annotations to that case in 31 A. L. R. 108; Vance, Insurance (2d Ed.) p. 826.

It is further contended that notice of cancellation and tender of the premiums paid within the contestable period amounts to a "contest" within that period sufficient to permit the company to defend an action upon the policy brought after the expiration of the period. Under the law of New York and by the great weight of authority such notice is not sufficient to constitute a contest of the policy, but the company must proceed within the time limited, either by way of defense to an action on the policy, or by an affirmative suit to cancel it. *Killian* v. *Metropolitan Life Ins. Co., supra; Powell* v. *Mutual Life Ins. Co.,* 313 Ill. 161, 144 N. E. 825; Vance, Insurance (2d Ed.) p. 823; Annotations in 36 A. L. R. 1245, and 64 A. L. R. 959. That equity has jurisdiction to cancel the policy, where, unless such action is taken, the company will be deprived of its legal defense, is well settled. *New York Life Ins. Co.* v. *Seymour,* 45 Fed. (2d) 47; cases cited in Annotations to that case in 73 A. L. R. 1529. In *Aetna Life Ins. Co.* v. *Richmond, supra,* it does not appear that there was an incontestable clause in the policy by reason of which the plaintiff would be deprived of its legal defense if no contest was made within the time limited.

There is error, and the cause is remanded to the Superior Court with direction to enter judgment in favor of the plaintiff.

In this opinion the other judges concurred.