## STEWART et al. v. AMERICAN LIFE INS. CO. (two cases).*
### Nos. 1268, 1269.

Circuit Court of Appeals, Tenth Circuit.
Sept. 8, 1936.

Chas. G. Yankey, of Wichita, Kan. (William Keith, Harvey C. Osborne, John G. Sears, Jr., and Verne M. Laing, all of Wichita, Kan., on the brief), for appellants.

Henry V. Gott, of Wichita, Kan. (Jos. G. Carey and Vermilion, Evans, Carey & Lilleston, all of Wichita, Kan., on the brief), for appellee.

William C. Michaels, of Kansas City, Mo. (Kenneth E. Midgley, of Kansas City, Mo., Alfred Hurrell and Ralph W. Hyatt, both of Newark, N. J., and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for the Prudential Ins. Co. of America, amicus curiæ.

Robert Stone, of Topeka, Kan., and James C. Jones, of St. Louis, Mo. (James C. Jones, Jr., of St. Louis, Mo., on the brief), for New York Life Ins. Co. and Central States Life Ins. Co., amici curiæ.

* Writ of certiorari granted 57 S. Ct. 189, 81 L. Ed. ——.

C. B. Robbins, Ralph H. Kastner, and Maurice E. Benson, all of Chicago, Ill., for American Life Convention, amicus curiæ.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

We reversed the decrees entered in favor of appellee in the causes above entitled for the reasons stated in our opinion in 80 F.(2d) 600. Thereupon appellee applied for rehearings. Other insurance companies asked to intervene in that application as friends of the court, and permission was granted. Through their counsel they, as well as counsel for appellee, have filed briefs, and claimed errors in our reversal have been elaborately argued. The whole controversy is whether appellee had a plain, adequate, and complete remedy at law and was thereby precluded from proceeding in equity, as the trial judge permitted it to do.

The point argued arose out of these facts and circumstances: On February 23, 1932, appellee, a Colorado corporation, issued to Reese Smith Stewart, a resident and citizen of Wichita, Kansas, two policies of life insurance. In one of them his wife, Ora Inez Stewart, and in the other his son, Reese Smith Stewart, Jr., was named as beneficiary. The insured paid the first annual premiums, but died on May 31, 1932, before any additional premium was due. Each policy contained this provision:

"This policy shall be incontestable, except for nonpayment of the premium, after one year from its date of issue if the Insured be then living, otherwise after two years·from its date of issue, * * *."

On September 3,.1932, which was six months and twenty days after the policies were issued, appellee filed a bill in equity against each beneficiary. It is to be observed that approximately a year and a half remained after the bills were exhibited before the two years, during which appellee had a right to contest the validity of the policies, would expire. The only reason set forth in the bill for filing it at the time it was filed is stated thus:

"That by the foregoing provisions said policy is incontestable after two years from its date of issue; that by reason of said provision said policy of insurance must be contested by this complainant on or before the expiration of the said period of contestability, notwithstanding the intervening death of the insured; that the defendant herein, the beneficiary under said policy, may delay the commencement of an action at law for the enforcement and collection of said policy until after the expiration of said contestable period or, if action is instituted, may dismiss the same after the expiration of said two-year period, so as to prevent this complainant from defending its liability under the policy on the ground of misrepresentation and fraud, as has been above set out, and this complainant is without adequate remedy at law in the premises and the only protection it has against the effects of said misrepresentation and fraud is in a court of equity."

The fraud on which the bills sought cancellation consisted of alleged false statements by the insured in his application for insurance as to the state of his health at the time of application and for several years previous thereto, and the medical attention and service that he had theretofore had because of the condition of his health. On September 26, 1932, each appellant moved to dismiss the bill. One of the grounds stated was that the bills did not state facts sufficient to constitute a valid cause of action in equity. No action was taken on those motions until July 28, 1933, when they were overruled. While they were pending and on October 27, 1932, appellee filed supplemental bills in which it was alleged that appellants on October 11, 1932, had instituted in the court below in which the bills were pending actions at law to recover the amounts named in the policies, and that if appellants were not enjoined and restrained they would prosecute these legal actions to determination prior to obtaining decrees in equity on the two bills, and it was prayed that they be restrained from doing so. On August 29, 1933, counsel for the respective parties submitted to the court a stipulation. It recited the dates of the filing of the bills, September 3, 1932; the date of instituting the two actions at law, October 11, 1932; the pendency of appellee's motions to restrain the prosecution of the law actions until the equity suits could be tried; and the agreement of the parties that the suit in equity should be tried before the law actions were tried;

"Provided, However, that the issues in said law action shall in the meantime be made up in order that said law issues thus joined shall stand ready for trial, with the understanding that said law issues, if any remain for trial shall be tried as soon after

the trial of the suit in equity as the court shall determine.

"It is further agreed by the parties hereto that if this stipulation meets with the approval of the court, that a stipulation and agreement to the same effect shall be entered in said law action.

"It is further agreed that if this stipulation does not receive the approval of the court, that then and in that event Complainant's application for an order restraining and enjoining further proceedings in said law action shall be presented to the court as soon as it will hear the same."

Defendants answered the bills on October 10, 1933. After admissions and denials, they denied that complainant was entitled to the relief demanded in the bills. The two equity causes were consolidated for trial, and early in January, 1934, they went to final hearing followed by decree on December 7, 1934, which cancelled the policies and ordered that they be delivered to the clerk of the court for surrender to plaintiff.

 Fraudulent representations and willful concealment of the truth in transactions with another that do or will result in damage to him are actionable and relief is within the concurrent jurisdiction of law and equity, except where restricted by controlling authority to one or the other court. Without such restrictions it would seem to be orderly procedure to permit the court which first obtains jurisdiction of the controversy to adjudicate all the rights of the parties. There are two correlated provisions on the subject—one constitutional, the other statutory. The Seventh Amendment to the Constitution of the United States provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

The sixteenth section of the original Judiciary Act (1 Stat. 82), which has been continuously retained in all material respects though with slight changes of phraseology, is now section 384, 28 U.S.C.A.:

"Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

These provisions have seemed so important to the rights of the citizen and orderly procedure in the two jurisdictions that they have been enforced by the Federal courts of their own motion even when not asserted and claimed by a litigant. Indian Land & Trust Co. v. Shoenfelt (C.C.A.) 135 F. 484; Hipp v. Babin, 19 How. 271, 15 L.Ed. 633; Cappetta v. Atlantic Refining Co. (C.C.A.) 74 F.(2d) 53, 98 A.L.R. 418; Phoenix Mut. Life Insurance Co. v. Bailey, 13 Wall. 616, 20 L.Ed. 501; Cable v. Insurance Co., 191 U.S. 288, 24 S.Ct. 74, 48 L.Ed. 188. The opinion of the court in the Cable Case reannounces the principles declared in the Bailey Case. These differences in fact, however, appear in those cases. In the Bailey Case, as in the case now under consideration, the bill in equity was filed first, and thereafter the beneficiary instituted her law action in the same court. In the Cable Case the law action was instituted in a state court about one and a half hours prior to the filing of the equity suit by the insurance company in the Federal court. In the Bailey Case and in the case now under consideration no special circumstances were set up to support and that would support equitable jurisdiction. In the case now under consideration it was alleged that during the one and a half years remaining in which the insurer might contest the validity of the policies the beneficiaries might not institute actions at law so that it could plead thereto the fraud alleged in the bill, or if the beneficiaries should bring such suits they might dismiss them at the end of the contestable period, and in that way defeat appellee's defense of fraud. Those are not allegations of fact. They are mere surmises. It did not allege that the beneficiaries had declared their intentions of doing what the bills alleged they might do. No other special circumstances appear in the bills as basis for the exercise of a Chancellor's powers. In the Cable Case special circumstances were alleged in the bill as grounds for equitable intervention, but the Supreme Court held them insufficient for that purpose. When the Cable and Bailey decisions are attentively read and carefully considered, followed by the Di Giovanni Case, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47, and Enelow v. Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440, to which we referred in our prior opinion, it is more than difficult to find error in our judgment of reversal. When appellee filed its bills it

was in no present danger of losing its right to defend in law actions if they should be brought by the beneficiaries on the policies. Approximately a year and a half remained for that procedure. Actions were brought on the policies by the beneficiaries thirty-eight days after the bills were filed and before issues were made up in the equity suit. It can not be maintained that from the time those actions were instituted the appellee did not have a plain, adequate, and complete remedy at law for the grievances set up in its bills by answering in the law actions. Adamos v. Life Ins. Co., 293 U.S. 386, 55 S.Ct. 315, 79 L.Ed. 444. The statute prohibits the sustaining of a suit in equity under those conditions. The relation of the parties to each other at that time was precisely as it was in the Bailey Case. The Circuit Court dismissed the bill without prejudice. The Supreme Court approved and affirmed, because the insurer could have all its rights adjudicated by answer to the action at law, instituted after the bill was exhibited to the Chancellor and his protection sought, and the beneficiaries would not be denied the right of trial by jury. Here the law actions were instituted within a reasonable time (four months and eleven days) after the loss occurred. If the beneficiary sues on the policy so that insurer has reasonable time thereafter within the two years to prepare and file its answer attacking the validity of the policy, that is enough to require the court to adjudicate the whole controversy in the law action, in the absence of other equitable grounds to support insurer's previous resort to equity. Our order was like that in the Bailey Case, that the bills be dismissed without prejudice. If occasion should arise disclosing an equitable right in appellee, the court could give protection.

It is insisted that the stipulation of counsel that the equity suit be heard first and that the law actions be continued until that could be done should be binding on appellants. The stipulation was not exclusively an agreement between the parties. It provided that its terms should meet the approval of the court and if it did not receive the court's approval that then and in that event complainant's application for an order restraining and enjoining further proceedings in the law actions would be presented to the court. The stipulation did not relieve the court of its duty, discussed in the authorities above cited, of complying with the express requirements of the statute, that no court of the United States shall sustain a suit in equity where a plain, adequate, and complete remedy may be had at law, nor deny a jury trial of a law action unless both parties expressly waive it. Acting contrary to this duty the court in this case approved the stipulation when it should have been denied.

It seems unnecessary to review the many cases cited in the briefs, because of differences in facts. In some of them grounds for equitable relief were set up in the bills aside from and in addition to the facts that constituted a basis for decree. In others no such bases for equitable relief were pleaded, and those bills were bad in our judgment.

We hold (1) that the bill did not show equity, and the motion to dismiss should have been sustained; (2) that appellee had opportunity from and after October 11, 1932, until February 23, 1934, to file answers to the actions on the policies and thus avail itself of its plain, adequate, and complete remedy at law for redress of the grievances set up in the bills; and because thereof this court did not err in its reversal of the decrees in said suits in equity.

PHILLIPS, Circuit Judge (dissenting).

Stewart, the insured, died May 31, 1932. Thereafter, the Insurance Company notified the beneficiaries that it elected to cancel the policies on the ground of fraud and tendered them the amount of the premiums paid, with interest. After waiting a reasonable time for the beneficiaries to bring actions at law on the policies, it filed its bills in equity on September 3, 1932, for cancellation of the policies.

Paragraph eight of each bill read as follows:

"8. That the said policy contains a clause in words and figures as follows, to-wit:

" 'Incontestability: This policy shall be incontestable, except for non-payment of the premium, after one year from its date of issue if the Insured be then living, otherwise after two years from its date of issue, except as to provisions and conditions (if any) relating to benefits in event of total and permanent disability and those granting additional insurance against death by accident.'

"That by the foregoing provisions said policy is incontestable after two years from its date of issue; that by reason of said provision said policy of insurance must be

contested by this complainant on or before the expiration of the said period of contestability, notwithstanding the intervening death of the insured; that the defendant herein, the beneficiary under said policy, may delay the commencement of an action at law for the enforcement and collection of said policy until after the expiration of said contestable period * * *, so as to prevent this complainant from defending its liability under the policy on the ground of misrepresentation and fraud, as has been above set out, and this complainant is without adequate remedy at law in the premises and the only protection it has against the effects of said misrepresentation and fraud is in a court of equity."

Paragraphs eight and ten of each answer read as follows:

"8. Defendants admit that the policy issued and delivered to the said Reese Smith Stewart, as aforestated, contained an 'Incontestability Clause' as set forth in paragraph numbered eight (8) in complainant's bill of complaint herein, but defendants deny any knowledge or information sufficient to form a belief as to any of the other allegations contained in said paragraph eight (8)."

"10. Defendants deny each and every allegation in the bill not herein admitted, controverted or specifically denied."

### I.

Whether the trial court had jurisdiction in equity must be determined by the facts and circumstances existing when the bills were filed. Lincoln National Life Ins. Co. v. Hammer (C.C.A.8) 41 F.(2d) 12, 17. If jurisdiction in equity then existed, it was not lost because an adequate remedy at law thereafter became available.[1]

At the time the bills in equity were filed, no actions at law had been brought on the policies. Since the contestable period was much shorter than the period fixed by the Kansas statute of limitations for bringing actions on the policies,[2] it was then within the power of the beneficiaries to postpone the commencement of actions at law on the policies until the expiration of the contestable period.

Where the insured under a policy of life insurance has died, and the obligation to pay a stated sum has become certain, a suit to cancel the policy on the ground of fraud will not lie in the absence of special circumstances making the preventive remedy necessary to avoid irreparable injury. Ordinarily the right to interpose the fraud as a defense affords an adequate remedy. Phoenix Mut. Life Insurance Company v. Bailey, 13 Wall. 616, 623, 20 L.Ed. 501. In that case the facts were these: The insured in two policies of life insurance had died, notice thereof had been given and the required proof furnished to the Insurance Company. The beneficiary's claims were purely legal demands. The Insurance Company refused payment on the ground the policies were obtained by false misrepresentations and fraudulent suppression of material facts, and instituted a suit in equity to enjoin the beneficiary from transferring the policies and for the cancellation thereof. Thereafter an action at law was commenced on the policies. The court said:

"Where a party, if his theory of the controversy is correct, has a good defence at law to 'a purely legal demand,' he should be left to that means of defence, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied a preventive remedy. Nothing of the kind is to be apprehended in this case, as the contracts, embodied in the policies, are to pay certain definite sums of money, and the record shows that an action at law has been commenced by the insured to recover the amounts, and that the action is now pending. * * *

"Courts of equity unquestionably have jurisdiction of fraud, misrepresentation, and fraudulent suppression of material facts in matters of contract, but where the cause of action is 'a purely legal demand,' and nothing appears to show that the defence at law may not be as perfect and complete as in equity, a suit in equity will not be sustained in a Federal court."

Subsequently to the decision in Phoenix Mut. Life Insurance Company v. Bailey, supra, it became common practice to incorporate in life insurance policies incontestable clauses under which, after the expiration of a stated time, the insurer is barred from

---

[1] Dawson v. Kentucky Distilleries, etc., Co., 255 U.S. 288, 296, 41 S.Ct. 272, 65 L.Ed. 638; Lincoln Nat. Life Insurance Co. v. Hammer, supra; Brown v. Pacific Mutual Life Ins. Co. (C.C.A. 4) 62 F. (2d) 711; Jefferson Standard Life Ins. Co. v. Keeton (C.C.A. 4) 292 F. 53, 56.

[2] The period of limitation for action on contract in writing in Kansas is five years. Rev.St.Kan.1923, 60—306.

contesting liability on the policy except for non-payment of premiums.

While the earlier decisions were in conflict,[3] it is now generally held that a mere repudiation by the insurer is not sufficient; and that there must be a contest by judicial proceeding within the time specified, either by way of an affirmative suit brought by the insurer or by a defense asserted by the insurer in an action on the policy.[4]

In Lincoln National Life Ins. Co. v. Hammer (C.C.A.8) 41 F.(2d) 12, 16, the court said:

"It is established by the great weight of authority * * * that the contest * * * must be initiated by an appropriate action brought, or by a pleading filed in a suit pending, within the time limited."

Where a policy of life insurance contains an incontestable clause, although the insured has died and the obligation of the policy to pay a stated sum of money has become certain, if the beneficiary may delay bringing an action on the policy until after the expiration of the contestable period, and the beneficiary fails to commence an action on the policy within a reasonable time after the obligation to pay has arisen, it has been held in a long line of federal and state decisions, that the requisite special circumstances exist to give a court jurisdiction of a suit in equity for cancellation on the ground of fraud.[5] The remedy at law in such a case is subject to the will of the beneficiary who may give it by bringing an action on the policy or withhold it by delaying the bringing of such action until the contestable period has expired, and thereby deprive the insurer of the defense of fraud. A remedy at law is in-

In New York Life Insurance Company v. Seymour (C.C.A. 6) 45 F.(2d) 47, 48, 73 A.L.R. 1523, the Insurance Company, after the death of the insured, brought a suit to cancel the policy on the ground of fraud; thereafter, the beneficiary brought an action on the policy in the state court which was removed to the Federal Court.

In sustaining the jurisdiction in equity the court said:

"The policy involved in the Bailey Case did not have the incontestable clause; and, however long the beneficiary delayed the suit at law, the assured's fraud in the application continued to be a good defense, which, if shown, would defeat the action. Manifestly, with the incontestable clause, the situation is different; the beneficiary has only to wait until the specified time expires; and, to the suit then brought, the defense is not available. This presents a situation within the exception of the Bailey Case, and gives equity the right to take hold."

[3] New York Life Ins. Co. v. Hurt (C.C.A. 8) 35 F.(2d) 92, 95.

[4] New York Life Ins. Co. v. Hurt (C.C.A. 8) 35 F.(2d) 92, 95; New York Life Ins. Co. v. Truesdale (C.C.A. 4) 79 F.(2d) 481, 485; Densby v. Acacia Mutual Life Ass'n, 64 App.D.C. 319, 78 F.(2d) 203, 205, 101 A.L.R. 863; Rose v. Mutual Life Ins. Co. (C.C.A. 6) 19 F.(2d) 280, 282; Philadelphia Life Ins. Co. v. Burgess (D.C.S.C.) 18 F.(2d) 599, 603; Peake v. Lincoln Nat. Life Ins. Co. (C.C.A. 8) 15 F.(2d) 303, 306; Chun Ngit Ngan v. Prudential Ins. Co. (C.C.A. 9) 9 F.(2d) 340, 341; Scharlach v. Pacific Mutual Life Ins. Co. (C.C.A. 5) 9 F.(2d) 317, 318; Harnischfeger Sales Corp. v. National Life Ins. Co. (C.C.A. 7) 72 F.(2d) 921, 922.

[5] Jefferson Standard Life Ins. Co. v. Keeton (C.C.A. 4) 292 F. 53, 54, 55; New York Life Ins. Co. v. Seymour (C.C.A. 6) 45 F.(2d) 47, 48, 73 A.L.R. 1523; Jefferson Standard Life Ins. Co. v. McIntyre (C.C.A. 5) 294 F. 886; Jones v. Reliance Life Insurance Co. (C.C.A. 4) 11 F.(2d) 69; Peake v. Lincoln Nat. Life Ins. Co. (C.C.A. 8) 15 F.(2d) 303, 305; Harnischfeger Sales Corporation v. National Life Ins. Co. (C.C.A. 7) 72 F.(2d) 921, 923; Brown v. Pacific Mutual Life Ins. Co. (C.C.A. 4) 62 F.(2d) 711, 712; New York Life Ins. Co. v. Truesdale (C.C.A. 4) 79 F.(2d) 481, 485; Keystone Dairy Co. v. New York Life Ins. Co. (C.C.A. 3) 19 F.(2d) 68; New York Life Ins. Co. v. McCarthy (C.C.A. 5) 22 F.(2d) 241, 245; Shaner v. West Coast Life Ins. Co. (C.C.A. 10) 73 F.(2d) 681, 683; New York Life Ins. Co. v. Cobb, 219 Mo.App. 609, 282 S.W. 494, 495–497; Ætna Life Ins. Co. v. Daniel, 328 Mo. 876, 42 S.W.(2d) 584, 586, 587; New York Life Insurance Company v. Steinman, 103 N.J.Eq. 403, 143 A. 529; Ebner v. Ohio State Life Ins. Co., 69 Ind.App. 32, 121 N.E. 315, 321; Travelers Ins. Co. v. Snydecker, 127 Misc. 66, 215 N.Y.S. 276; Prudential Ins. Co. of America v. Tanenbaum, 53 R.I. 355, 167 A. 147; New York Life Ins. Co. v. Rigas, 117 Conn. 437, 168 A. 22, 91 A.L.R. 1122. See, also, American Trust Co. v. Life Ins. Co. of Virginia, 173 N.C. 558, 92 S.E. 706; Pacific Mut. Life Ins. Co. v. Parker (C.C.A. 4) 71 F.(2d) 872, 874; Massachusetts Bonding & Ins. Co. v. Anderegg (C.C.A. 9) 83 F.(2d) 622; Rose v. Mutual Life Ins. Co. of New York (C.C.A. 6) 19 F.(2d) 280; note 73 A.L.R. 1529.

adequate, if it may be given or withheld at the will of the opposing party. [6]

Has the doctrine of the cases cited in note five been disapproved or limited by the recent decisions of the Supreme Court referred to infra?

In Enelow v. New York Life Insurance Company, 293 U.S. 379, 55 S.Ct. 310, 312, 79 L.Ed. 440, and Adamos v. New York Life Ins. Co., 293 U.S. 386, 55 S.Ct. 315, 79 L. Ed. 444, the beneficiaries had brought actions at law on the policies and the Insurance Company sought to interpose in the pending actions at law equitable counterclaims for cancellation on the ground of fraud. That the Supreme Court did not intend to disapprove the doctrine of the cases cited in note five, is clearly shown by the following quotation from the opinion in the Enelow Case:

"The instant case is not one in which there is resort to equity for cancellation of the policy during the life of the insured and no opportunity exists to contest liability at law. *Nor is it a case where, although death may have occurred, action has not been brought to recover upon the policy, and equitable relief is sought to protect the insurer against loss of its defense by the expiration of the period after which the policy by its terms is to become incontestable.*[2] Here, on the death of the insured, an action at law was brought on the policy, and the defendant had opportunity in that action at law, and before the policy by its terms became incontestable, to contest its liability and accordingly filed its affidavit of defense. That defense was solely that the defendant had been induced to issue the policy by false answers in the application which were alleged to have been made by the applicant 'with knowledge of their falsity and fraudulently' in order to obtain the insurance. The affidavit of defense showed nothing whatever as a further ground for equitable relief, and the respondent is necessarily confined to the case it made. In such a case, the defense of fraud is completely available in the action at law, and a bill in equity would not lie to stay proceedings in that action in order to have the defense heard and determined in equity." (Italics mine.)

In note two to the Enelow opinion the court cites many of the cases cited in note five, supra.

Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47, was a suit in equity to cancel two policies of fire insurance after losses had occurred. One policy for $3,000, was issued to Di Giovanni and his wife and covered a two-story brick building owned by them jointly. One policy for $1,500 was issued to Di Giovanni and covered personal property solely owned by him. The bill charged that pursuant to a conspiracy, the Di Giovannis overinsured the property and caused its destruction by fire. Two grounds for equitable jurisdiction were set up, the want of a remedy at law in the Federal Courts, neither claim being in excess of $3,000, and the necessity of defending separately, two groundless actions at law. The bill alleged that the Di Giovannis threatened and were about to bring actions at law on the policies. Thus it will be seen that no incontestable clause was involved and the grounds of equitable jurisdiction were entirely different from those relied on by the Insurance Company in the instant cases. It is true the Supreme Court used language in the opinion which, if literally construed, would limit the doctrine of the cases cited in note five. However, language of an opinion should be read in the light of facts and circumstances of the particular case under consideration;[7] and in view of the fact that the court, in the Enelow opinion had so recently tacitly approved the cases cited in note five, the general language in Di Giovanni v. Insurance Associa-

---

[6] Bank of Kentucky v. Stone (C.C.Ky.) 88 F. 383, 391; Lincoln National Life Ins. Co. v. Hammer (C.C.A. 8) 41 F.(2d) 12, 16; New York Life Ins. Co. v. Seymour (C.C.A. 6) 45 F.(2d) 47, 73 A.L.R. 1523; New York Life Ins. Co. v. Sisson (D.C. Pa.) 19 F.(2d) 410, 412.

[7] In O'Donoghue v. U. S., 289 U.S. 516, 550, 53 S.Ct. 740, 750, 77 L.Ed. 1356, the court said:

"'It is a maxim, not to be disregarded,' said Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L.Ed. 257, 'that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.'"

tion should not be construed as disapproving or limiting the doctrine of such cases.

There are ·persuasive reasons why an insurer should not be compelled to wait until the incontestable period is about to expire before bringing its suit in equity for cancellation. The beneficiary might absent himself from the jurisdiction or otherwise prevent service of process and thus frustrate an effort to initiate a contest until after the contestable period had expired. See New York Life Ins. Co. v. Panagiotopoulos (C.C.A.1) 80 F.(2d) 136. It is my view that the insurer should only be required to wait a reasonable time for the beneficiary to bring an action at law on the policy, and if the beneficiary fails so to do, that the insurer should then have the right to seek equitable relief. In the instant cases, the Insurance Company waited a reasonable time and the beneficiaries failed to sue at law. I think the Insurance Company was entitled to invoke the equitable jurisdiction.

The views expressed in our original opinion did not have my entire approval. The arguments and briefs on the petition for rehearing have led me to the conclusion that we should not depart from the doctrine of the cases cited in note five unless and until the Supreme Court, in a case where the point is actually involved, disapproves the doctrine of those cases.

## II.

Where the court has jurisdiction of the subject matter and the parties are before it and the case is within the general field of equitable jurisdiction, ·the objection that the plaintiff has an adequate remedy at law may be waived. [8]

It is only when the want of equity jurisdiction is obvious that the court should notice it of its own motion. [9]

In American Mills Company v. American Surety Company, 260 U.S. 360, 43 S. Ct. 149, 67 L.Ed. 306, the plaintiff moved to dismiss respondent's cross-bill in equity on the ground respondent had an adequate remedy at law. ·The motion was overruled. The court held the plaintiff thereafter waived the objection by failing to renew it and by answering and introducing proof on the merits.

After the trial court had overruled the motions of the defendants to dismiss the bills on the ground that the Insurance Company had an adequate remedy at ·law, the defendants answered over. In their answers they did· not again challenge the equity jurisdiction. Nor did defendants challenge the allegations of paragraph eight of the bills by any proper pleading, since the facts averred in paragraph eight of the bills, concerning which they alleged want of sufficient knowledge or information to form a belief, were clearly within their knowledge; [10] and equity rule thirty abolishes the plea of general denial and an allegation of a bill not specifically denied will be taken as admitted. Hass v. U. S. (C.C.A.8) 17 F.(2d) 894.

Instead of continuing to challenge the jurisdiction in equity, the defendants filed answers properly raising issues going solely to the merits, and stipulated that the equity suits might be tried in advance of the actions at law. This conduct, in my opinion, constituted a waiver of the objection to the equity jurisdiction on ·the ground that the Insurance Company had an adequate remedy at law.

For the foregoing reasons, it is my conclusion that our original opinion should be withdrawn and the decrees below affirmed; and I respectfully dissent from the opinion of the court on the petition for rehearing.

---

[8] Lyons Milling Co. v. Goffe & Carkener (C.C.A. 10) 46 F.(2d) 241, 245, 83 A.L.R. 501; Duignan v. U. S., 274 U.S. 195, 199, 47 S.Ct. 566, 71 L.Ed. 996; Twist v. Prairie Oil & Gas Co., 274 U.S. 684, 689–691, 47 S.Ct. 755, 71 L.Ed. 1297; American Mills Company v. American Surety Company, 260 U.S. 360, 363, 43 S.Ct. 149, 67 L.Ed. 306; Perego v. Dodge, 163 U.S. 160, 164, 16 S.Ct. 971, 41 L.Ed. 113; Reynes v. Dumont, 130 U.S. 354, 395, 9 S.Ct. 486, 32 L.Ed. 934; Kilbourn v. Sunderland, 130 U.S. 505, 514, 9 S.Ct. 594, 32 L.Ed. 1005; Tyler v. Savage, 143 U.S. 79, 96, 97, 12 S.Ct. 340, 36 L.Ed. 82; Southern P. R. Co. v. U. S., 200 U.S. 341, 349, 26 S.Ct.

296, 50 L.Ed. 507; Brown B. & Co. v. Lake Superior Iron Company, 134 U.S. 530, 536, 10 S.Ct. 604, 33 L.Ed. 1021.

[9] Matthews v. Rodger, 284 U.S. 521, 524, 52 S.Ct. 217, 76 L.Ed. 447; Singer Sewing Machine Company v. Benedict, 229 U.S. 481, 484, 33 S.Ct. 942, 57 L.Ed. 1288.

[10] Fox Film Corp. v. Gross (D.C.N.Y.) 56 F.(2d) 457; Deseret Sav. Bank v. Walker, 78 Utah, 241, 2 P.(2d) 609, 612; Dietlin v. General American L. Ins. Co. (Cal.App.) 41 P.(2d) 979, 985; First Sav. Bank of Ogden v. Brown (Utah) 54 P.(2d) 237, 241.